NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-115-KKC

MARY JOE EVERAGE, ET AL.                                                           PLAINTIFFS

VS:                              **MEMORANDUM OPINION AND ORDER**

OFFICER WHITAKER, ET AL.                                                           DEFENDANTS


The plaintiffs,  Mary Joe Everage and Everage Real Estate, Inc., ("ERI") have  filed  a *pro se* complaint alleging numerous violations of 42 U.S.C. §1983.  Mary Joe Everage lists her address as P.O. Box 67, Marietta, Georgia, 30061.  Plaintiff Everage Real Estate, Inc., lists its address as 1350 Kentucky Boulevard, 312 Hacienda Apartments, Hazard, Kentucky, 41701.  Plaintiff Mary Joe Everage has submitted a "Motion and Affidavit in Support of Motion Seeking Permission to Proceed *In Forma Pauperis*" [Record No. 6].

To establish a right to relief under §1983, the plaintiff must plead and prove two essential elements.  He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir. 1994).

This is a  *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  However, 28 U.S.C. §1915(e)(2) affords

a court the authority to dismiss a case at any time if the court determines that the action is (i) frivolous or malicious or (ii) fails to state a claim upon which relief can be granted.

DEFENDANTS

The plaintiff has named the following entities and/or individuals as defendants: (1) an individual whom the plaintiff identifies only as "Officer Whitaker"; (2) the Hazard, Kentucky Police Department; (3) City of Hazard, Kentucky; (4) an individual whom the plaintiff identifies only as "Officer Campbell"; (5) Perry County, Kentucky Sheriff's Department; (6) Perry County, Kentucky; (7) the Perry County Detention Center ("PCDC"); (8) Mac Feltner, Chief Jailer, PCDC, "being sued as 'Big Mac' Feltner"; (8) Johnnie Dean Feltner, Deputy Jailer, PCDC, "being sued as 'Deputy Johnnie Dean Feltner'"; (9) Janice Feltner, Deputy Jailer, PCDC, "being sued as 'Deputy Janice Feltner'"; (10) an individual whom the plaintiff identifies only as "Deputy Cornett," "being sued as 'Deputy Cornett'"; (11) an individual whom the plaintiff identifies only as "Matron" Fugate, "being sued as 'Matron Fugate.'"  The plaintiff asserts claims against the individually named defendants in both their individual *and* official capacities.

CLAIMS

In her eleven-page, typewritten complaint, Plaintiff Mary Joe Everage alleges that the named defendants violated her rights guaranteed by numerous provisions of the United States Constitution. Specifically, the plaintiff alleges that the named defendants: (1) violated her Fourth Amendment rights by arresting her without a warrant, and by falsely imprisoning her; (2) violated her Eighth Amendment rights subjecting her to cruel and unusual punishment to the extent that they were deliberately indifferent to her serious medical needs while she was confined in the Perry County Detention Center ("PCDC"); and (3) violated her rights under the state laws of Kentucky.

2

Plaintiff Mary Joe Everage alleges, on behalf of ERI, that the named defendants were responsible for ERI's being without an operating officer, a chief executive officer, president, or secretary "during the time the plaintiff's rights were being denied."  [Complaint, Record No. 1, p. 2]  To that end, the plaintiff alleges that the named defendants violated unspecified provisions of the Sherman Anti-Trust Act.[1]

<u>ALLEGATIONS OF THE COMPLAINT</u>

The following discussion is a summary of the allegations contained in the complaint.

1.  <u>Events Prior to June 27, 2004</u>

The plaintiff states she began renting a house located at 440 Birch Street, Hazard, Kentucky, from Jerry Nance in May of 2003.[2]  She alleges that during the entire six weeks she rented the home from Nance, he came to the house, uninvited, and harassed her.  She states that she had to ask Nance to leave, and that "files and personal items were disturbed, messages deleted from the answering

---

[1]  The Sherman Anti-Trust Act is set forth in Title 15, Chapter One of the United States Code.  It provides as follows:

> § 1.  **Trusts, etc., in restraint of trade illegal; penalty**
>
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.  Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 1.

To the extent that Plaintiff Mary Joe Everage alleges that the defendants deliberately destroyed "the plaintiff's right to make a living," it would appear that she is asserting violations of the Sherman Anti-Trust Act on her own behalf.

[2] Although the plaintiff states in her complaint that she began renting from Mr. Nance in May, 2003 [Complaint, p. 5], she then states that she had been renting from Mr. Nance approximately six weeks prior to her arrest on June 27, 2004.  Based on this statement, and her reference to two episodes which occurred on June 15, *2004*, and June 21, *2004*, the Court concludes that the plaintiff mistakenly alleged that she began renting from Nance in May, 2003.  It appears more likely that she began renting from Nance in May, *2004*.

3

machine, tools missing" [Complaint, p. 5]. She states that on June 15, 2004, her car was vandalized and the engine was destroyed, and that on June 21, 2004, she informed Nance that she would be moving and requested that he not return until she vacated the premises [*Id*.]. She alleges that she called the police and made a verbal complaint of harassment against Nance [*Id.*].

### 2.  First Arrest: June 27, 2004

The first constitutional violation of which the plaintiff complains occurred on June 27, 2004. She alleges that on that date, "Officer Whitaker" of the Hazard City Police Department, accompanied by an individual she identified as "Officer Combs," came to her residence and knocked on the door. She states that she informed the officers that her landlord persisted in harassing her, and that if her landlord returned and continued bothering her, she would defend herself. Plaintiff alleges that with that statement, Officer Whitaker accused her of terroristic threatening, broke in the door, and arrested the plaintiff. She alleges that Whitaker's unlawful entry into her residence and her arrest were without probable cause and constituted an unreasonable seizure under the Fourth Amendment. She states that in September, 2001, Perry District Judge Stephens dismissed the charges against her.

### 3.  Confinement in PCDC

The plaintiff states that she was taken to the PCDC on June 27, 2004, and was placed in a cell with several women. While participating in a clean-up of the room, the plaintiff slipped on a slippery substance and hit a large metal table before hitting the concrete floor. She alleges that PCDC guard Janice Feltner refused her repeated pleas for medical help. Plaintiff further alleges that when she used the microphone to alert the guard to her injury, PCDC Matron Fugate told her that if she continued to ask for medical attention, she would be slapped and pepper-sprayed.

Plaintiff alleged that she sustained a permanent, life-threatening injury while confined in the PCDC on June 29, 2004, and that she was denied prompt medical attention at both the PCDC and the FCDC. She also alleges that she was subjected to unsanitary and unsafe conditions of confinement. She alleges that these deprivations violated the Eighth Amendment of the United States Constitution.

### 4. Transfer to FCDC

The plaintiff was, at some unspecified point in time, transferred to the Fayette County Detention Center ("FCDC") in Lexington, Kentucky. She states that on July 30, 2004, she was finally diagnosed with broken ribs and high blood pressure. She complains, however, that the doctor at the FCDC waited 6-7 days to X-ray her, and that despite her requests, FCDC staff refused to take her to St. Joseph Hospital in Lexington. Plaintiff states that she was released from the FCDC, although she did not specify when she was released. She states that when she was released, she sought medical treatment at St. Joseph Hospital.

### 5. Events Following Release from FCDC

Plaintiff states that at some unspecified time, presumably after her release from the FCDC, she asked "the County Attorney" for assistance with her medical needs [Complaint, p. 7]. The plaintiff does not specify to which "County Attorney" she made this request.[3] According to the plaintiff, the County Attorney told her that he did not have time to listen to complaints about a jailhouse injury or other jailhouse condition [*Id.*].

---

[3] To the extent that the plaintiff alleges she sustained her injuries while confined in the PCDC, the Court assumes that she approached the Perry County Attorney.

Next, the plaintiff alleges that after her initial injuries were diagnosed on July 30, 2004, her X-rays "were stolen or missing from the Appalachian Regional Hospital." [*Id*.]. She alleges that because "deputy jailers" transported her to the hospital/doctor "with LKLP county transportation," the jail had information about her medical visits.[4] While the plaintiff's allegations are unclear, the inference appears to be that an unspecified jail had something to do with the alleged disappearance of her medical records. Again, the Court cannot be certain but assumes that the plaintiff may be referring to the PCDC.

### 6. Suit Filed in Perry Circuit Court:  August, 2004

The plaintiff's presentation of facts concerning her second term of confinement in the PCDC are not set forth in chronological order. The Court found it difficult, in some instances, to determine the exact sequence of events. Piecing together the facts as alleged in the complaint, it appears that in August, 2004, the plaintiff filed a *pro se* civil action in the Perry Circuit Court. The plaintiff again fails to set forth any details about the suit she filed in Perry Circuit Court. To the extent that the plaintiff alleges later in the complaint that she was re-arrested on November 23, 2004, in retaliation for having filed her *pro se* lawsuit in Perry Circuit Court, it would appear that the Perry Circuit Court lawsuit concerned the Eighth Amendment claims against the PCDC similar to the ones which the plaintiff is asserting in the instant proceeding [Complaint, pp. 7-8].[5]

### 7. Second Arrest:  November 23, 2004

---

[4] It is unclear whether the plaintiff is referring to PCDC deputy jailers or deputy jailers from the FCDC. To the extent the plaintiff states she was transferred to the Appalachian Regional Medical Center, which is in Eastern Kentucky, the Court would assume that the plaintiff is referring to PCDC deputy jailers, not FCDC jailers. Additionally, the plaintiff does not explain to what "LKLP county transportation" refers.

[5] The plaintiff alleges that she: (1) attached her June 30, 2004 medical records to the complaint she filed in Perry Circuit Court, and (2) "hand carried" a copy to "Defendant's attorney" [Complaint, p. 8].

Plaintiff states that on November 23, 2004, her address was Apartment #12, 1350 Kentucky Boulevard, Hazard, Kentucky.  She alleges that on this date she was resting at her home, pursuant to her doctor's advice, when she received a call from a man who identified himself as "Officer Campbell."  She states that Officer Campbell asked her if she was the same person who had filed suit against the jail, and that if so, he wanted to ask her some questions [Complaint, p. 8].

The plaintiff alleges that when Officer Campbell arrived at her residence, he arrested her without a warrant, identification or affidavit, claiming that the arrest stemmed from "a real estate dispute arising out of the State of Georgia."  [Complaint, p. 8]  She alleges that she had not been indicted or convicted of any crime in Georgia.  She states that she "maintained her innocence of any crime."  [*Id*., p. 9]  She alleges that her arrest on that date lacked probable cause; was a breach of unspecified procedures and safeguards; and amounted to kidnaping by force.  Apparently referring to her *pro se* lawsuit in Perry Circuit Court, the plaintiff alleges that this arrest was "an effort to silence plaintiff's petition to redress her grievances."  [*Id*.]

### 8.  Confinement in PCDC:  11/23/04 to 1/21/05

The plaintiff states that after her second arrest on November 23, 2004, she was again confined in the PCDC in November, 2004, for a period of sixty (60) days [Complaint, p. 8].  She alleges that every day during this sixty-day period, she was asked to sign extradition papers.

She states that while confined in the PCDC during this period, PCDC staff had accused her of "fabricating" her injuries and medical condition.  She states that when she asked the nurse for medical treatment for her pain and high blood pressure just prior to her release on January 21, 2005, the nurse acknowledged her injuries and the fact that she (plaintiff) was required to take prescription medications for these conditions.  Plaintiff alleges that during her sixty-day stay in the PCDC,

7

despite her requests to be released due to her injuries, she was not released.  She asserts that she missed two doctors' appointments during this time period, one of which was with a heart specialist.

The plaintiff explains that on her fifth day at the PCDC, she was placed in a solitary cell, where she remained for fifty-three days.  She states that the cell, which was known as "the hole, " had no bed and no heat.  She states that the cell was freezing because the heat pump blew cold air from the outside.  While confined in the hole, she was denied various privileges such as television, visitors, books, and telephone calls.  She states that the defendants' actions caused her misery and pain for an extended period of time [*Id.*, p. 9].  According to the plaintiff, sick inmates were segregated from the general population and were placed in a "detox hole" without any medication or medical attention [*Id.*].  The plaintiff further asserts that the PCDC had no grievance system [*Id.*].

### 9.  Plaintiff's Extradition

The plaintiff states that she was eventually extradited, although she does not state when the extradition actually occurred.  She states that she was taken, via a North Carolina transport service, to New York and then to Georgia.  She states that she was booked into jails in both North Carolina and Virginia "with criminal status and photographs."  [*Id.*]  She alleges that the trip lasted four days, during which time she had to wear handcuffs and leg shackles [*Id.*].

### RELIEF REQUESTED

The plaintiff requests the following relief:  (1) $25,000,000.00 in compensatory damages; (2) $10,000,000.00 in punitive damages; (3) a declaratory judgment in her favor; (4) attorney's fees; (5) court costs; and (6) any other relief to which she appears entitled.

DISCUSSION

1.  Municipal Defendants
A.  Claims Against Perry County, Kentucky,
Perry County Detention Center, and the
Perry County Sheriff's Department

The plaintiff has named "Perry County" as a defendant to this action, alleging that it is liable to her for violations of her Fourth Amendment rights.  She has not, however, described or alleged any facts involving wrongdoing on the part of Perry County with regard to her arrest by its agent/employee, "Officer Campbell," on November 23, 2004.  Simply put, she fails to state any claim against Perry County or the other two county entity defendants.  The only actions she describes concern Officer Campbell.

Neither Perry County nor the Perry County Fiscal Court can be held liable for acts of employees or agents under a theory of *respondeat superior*; as a local government, they can only be held liable when the constitutional deprivation arises from a governmental custom.  *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 236 (1978) ( " . . . [t]he language of §1983 . . . compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.  In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot he held liable under §1983 on a *respondeat superior* theory.").

"[A] municipality can be liable under §1983 only where its policies are the 'moving force [behind] the constitutional violation.'"  *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L. Ed.2d 412 (1989) (quoting *Monell,* 436 U.S. at 694).  Municipal liability must rest on a direct causal connection between the policies or customs of the city and the constitutional injury to the

9

plaintiff; "[r]espondeat superior or vicarious liability will not attach under § 1983." *Id*. at 385, 109 S.Ct. 1197. *See also Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005 ); *see Wooten v. Logan*, 2004 WL 68541, **2 (6th Cir. Tenn., January 14, 2004), which reiterates that a local government cannot be made liable under principles of *respondeat superior*; for a municipality to be liable, the action must be the result of an official policy of the municipality. *Wooten* notes that the requirements of *Monell* were intended to distinguish acts of the municipality from the acts of the employees of the municipality. *Id*.

Kentucky county fiscal courts and/or the members thereof must be shown to have "condoned, encouraged or participated in . . . alleged misconduct, in order for them to be held liable in . . . §1983 action[s]. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)." *Gibson v. Stratton*, 930 F.2d 918, 181 WL 52897 (6th Cir. 1991) (unpublished opinion). *See also Nunn v. Henderson Fiscal Court*, 69 F.3d 537, 1995 WL 631597 (6th Cir. 1995) (unpublished opinion) (affirming grant of summary judgment, the court finding that the plaintiff "failed to establish a 'custom or policy' so that the defendants could be held liable in their official capacities." *Id*.). *See also Hicks v. Frey*, 992 F.2d 1450 (6th Cir. 1993); *Johnson v. Hardin County*, 908 F.2d 1280, 1285 (6th Cir. 1985) (local governing body can be held liable only where the allegedly unconstitutional act is a result of an unconstitutional policy officially adopted by the governing body's officers).

In *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir.2004) (citations and internal quotation marks omitted), Graham died in custody after he ingested a large amount of cocaine while being arrested for an unrelated marijuana charge. His estate sued and alleged that the county jail had provided inadequate medical care to the decedent. The Sixth Circuit held that even if a constitutional violation had occurred with respect to the quality of medical care

10

the decedent received during the arrest, Washtenaw County could not be held liable for it.  The Sixth Circuit carefully examined the County's policy regarding medical care to prisoners.  Citing *Monell*, the Sixth Circuit determined that plaintiff was required to demonstrate that the County's "deliberate conduct [was] the moving force behind the violation."  *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d at 383.  The court concluded that there was no evidence that the county's policy regarding the provision of medical care to prisoners was the "moving force" behind any constitutional violation committed against the decedent.

The plaintiff's claims against the Perry County Sheriff's must be dismissed.  The plaintiff has not alleged that either the Perry County Sheriff's Office, or Perry County and/or the Perry Fiscal Court, knew about or condoned the actions which the plaintiff alleges its employee, "Officer Campbell," committed on November 23, 2004.  Under the holding of *Monell*, the claims against the Perry County Sheriff must be dismissed for failure to state a claim upon which relief can be granted.

In sum, the plaintiff has failed to allege that Perry County and/or the Perry County Fiscal Court have implemented or practiced a policy which violates the Fourth Amendment of the United States Constitution.  The plaintiff's claims against Perry County and the PCDC must be dismissed without prejudice.  28 U.S.C. §1915A.

> B.   Claims Against City of Hazard Police Department
> and the City of Hazard

As stated previously, *Monell* requires a plaintiff asserting claims against a municipal entity to allege that the defendant municipality employed a custom or policy which resulted in a constitutional deprivation.  The plaintiff makes no such allegation.  At best, the plaintiff alleges that "Officer Whitaker" of the City of Hazard Police Department unlawfully entered her home on June 27, 2004, and arrested her without probable cause.  As discussed, *Monell* holds that a municipal

entity or local governmental body cannot be held liable for acts of its employees under the principles of *respondeat superior*, unless those persons are executing the government's policies or customs. *Monell*, 436 U.S. 658, 691; *Gregory v. Shelby County, Tenn*., 220 F.3d 433, 442 (6th Cir. 2000).

Similar to the plaintiff's deficient pleading with respect to Perry County, the plaintiff has not pled that the City of Hazard, as a local governing body, or its police department, have adopted an unconstitutional policy which caused her harm.  There is no allegation that the governing body of the City of Hazard knew about or condoned any actions by Officer Whitaker.  The pleading herein contains absolutely no indication that the City of Hazard was the moving force behind any alleged deprivation, or that the complained-of conduct was the result of a policy officially adopted by the municipality's officers.  Consequently, the claims against the City of Hazard are dismissed.

### 2. Claims Against Individually Named Defendants

### A. Claims Against PCDC Jailer "Big" Mac Feltner, PCDC Deputy Jailer Johnnie Dean Feltner, and PCDC "Deputy Cornett"

The plaintiff has asserted claims against Mac Feltner, the jailer of the PCDC; Johnnie Dean Feltner, deputy jailer of the PCDC, and Deputy Cornett of the PCDC, both in their individual and official capacities.  All claims against these defendants must be dismissed.

To the extent that the plaintiff has sued these defendants in their individual capacities, the plaintiff has failed to allege that any of them were directly involved in, or actively participated in, the alleged violation of the plaintiff's Eighth Amendment rights.  In fact, the plaintiff does not mention any of these defendants, at all, in her discussion of the relevant facts.  A party cannot be held liable under §1983 absent a showing that the party was involved in or acquiesced in the allegedly unconstitutional conduct.  *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th

Cir.1989). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir.1982).

"When monetary damages are sought under section 1983 . . . a showing of some personal responsibility of the defendant is required." *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973).  A plaintiff must prove that a particular defendant was personally involved in the deprivation of his rights.  *Id.*  Liability will lie only where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.  A plaintiff must demonstrate that the defendant proximately caused his alleged injuries.  *White v. Gerbitz*, 892 F.2d 457, 463 (6th Cir. 1989).  "Congress did not intend § 1983 liability to attach where causation is absent."  *Deaton v. Montgomery Cty., OH*, 989 F.2d 885, 889 (6th Cir. 1993).  To establish causation, a plaintiff must adduce "an affirmative link . . . [a] moving force that animated the behavior . . . that resulted in the constitutional violations alleged."  *Id.*

To the extent that the plaintiff has asserted claims against these defendants in their official capacities, these claims must also be dismissed under the Eleventh Amendment of the United States Constitution. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any foreign State.

Under the Eleventh Amendment, any suit for damages against state officials sued in their *official* capacities would be not be viable, because it would be the same as a suit against the state itself.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and  *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir. 1994) ( state officials sued in their official capacities are not considered "persons" under §1983).

13

"Official capacity suits...generally represent only another way of pleading an action against an entity of which an officer is an agent...[An] official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985). State officials, in their official capacities, are not considered "persons" under §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. at 7; *Doe v. Wigginton*, 21 F.3d at 737 (6th Cir. 1994). These defendants enjoy absolute immunity from suit in their official capacities, under the Eleventh Amendment. The official capacity claims against the are dismissed with prejudice.

B. Claims Against PCDC Deputy Jailer Janice Feltner
and PCDC "Matron" Fugate

The plaintiff has sued these defendants in their individual and official capacities. As the Court has already discussed, under the Eleventh Amendment, §1983 claims against state actors in their official capacities cannot be maintained. These claims are dismissed.

The plaintiff has also named defendants "Matron" Fugate and Janice Feltner in their individual capacities. She alleges that during her first period of confinement in June, 2004, these defendants actively and affirmatively denied her requests for medical treatment.

The Court must determine whether the plaintiff has properly exhausted her claims. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions, and any other incident to prison life, such as excessive force, to exhaust all available administrative remedies before suing in federal court. *See Porter v. Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Booth v. Churner*, 532 U.S. 731, 739-41, 121 S.Ct. 1819, (2001); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.1998). *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust

14

administrative remedies before bringing suit based on inadequate conditions of confinement, citing *Booth v. Churner*, instant plaintiff's Eighth Amendment claims).

The plaintiff alleges that there was no grievance system in the PCDC through which to pursue complaints. The Court is without sufficient information with which to analyze this claim, or the allegation as to lack of grievance procedures, any further at this time. Accepting those assertions as true, the Court will order summons to issue and require Defendants Janice Feltner and "Matron," in their individual capacities, to respond to the plaintiff's claims against them.

### C. Claims Against "Officer Whitaker"

The plaintiff alleges that because "Officer Whitaker" did not have probable cause to arrest her on June 27, 2004, he violated her Fourth Amendment right to be free from unreasonable seizures. The plaintiff has also alleged that in September, 2004, the Perry District Court dismissed the terroristic threatening charge which was allegedly the basis of her arrest in June, 2004.

*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994), does not appear to bar the plaintiff's claims against Officer Whitaker. *Heck v. Humphrey* precludes the recovery of civil damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, where the plaintiff is unable to prove that the underlying conviction or sentence has been: (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such determination; or (4) called into question by a federal court's issuance of a writ of habeas corpus. *Id.*, 512 U.S. 477, 486-87. The plaintiff has alleged that the terroristic threatening charge, which was the basis of her arrest on June 27, 2004, was dismissed. Accordingly, she will be allowed to proceed with her Fourth and Fourteenth Amendment claims against Officer Whitaker in his *individual*

capacity.  Summons shall issue on that claim.

The claims against Officer Whitaker in his *official* capacity must, however, be dismissed. To successfully plead an official capacity claim against a municipal employee or entity, a plaintiff must:  1) identify a municipal policy or custom; 2) connect that policy or custom to the municipality; and 3) show that execution of that policy or custom caused the particular injury.  *See Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 at 690; *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir.1993); *Gregory v. Shelby County, Tenn.*, 220 F.3d at 442.  Here, the plaintiff has alleged that officer Whitaker violated her Fourth Amendment rights, but she did not identify any municipal policy or custom that led to the alleged violation of her constitutional rights.  The plaintiff's claims against Officer Whitaker, in his official capacity, must be dismissed with prejudice.

> D.  Claims Against "Officer Campbell"
> i.  Preclusion under *Heck v. Humphrey*

For the same reason that official capacity claims against Officer Whitaker were dismissed, the Court must dismiss the *official* capacity claims against Officer Campbell.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 at 690.  The Court must also dismiss the plaintiff's Fourth Amendment claims against Officer Campbell in his *individual* capacity, because they appear to be an attempt to collaterally attack some type of criminal proceedings initiated against her in other jurisdictions.

The plaintiff refers to extradition proceedings in Georgia, and to the fact that Officer Campbell accused her of some type of charge stemming from a real estate dispute "arising out of the State of Georgia."[6]  Additionally, she states that she was "booked' in both North Carolina and

---

[6] The plaintiff described herself on p. 2 of her complaint as being "someone innocent and without a criminal record." Her attachments appear to refute that allegation. One of her exhibits is a document dated March 15, 2005, from the Superior Court of Oconee, Georgia, entitled "Request to Terminate Case Early."  It states that the plaintiff was

Virginia after she was arrested the second time, on November 23, 2004.  The reference to "being booked" denotes the existence of a criminal proceeding of some nature.

As noted herein, a plaintiff alleging a §1983 malicious prosecution claim must demonstrate that the previous prosecution, alleged to have been malicious, was terminated in favor of the plaintiff.  *Dunn v. Tennessee*, 697 F.2d 121, 126 (6th Cir. 1982), *cert. denied*, 460 U.S. 1086 (1983) (". . . this Court finds that favorable termination of the prior criminal proceeding marks the point at which a 1983 claim for malicious prosecution accrues."); *Singleton v. City of New York*, 632 F.2d 185, 194-195 (2d Cir. 1980), *cert. denied*, 450 U.S. 920 (1981) (plaintiff claiming deprivation of 1983 civil rights through malicious prosecution must allege and proving that the prosecution terminated in some manner, indicating that plaintiff was not guilty of the offenses charged).   If the instant plaintiff has been convicted of an offense which has not been reversed or otherwise successfully challenged, *Heck v. Humphrey* would bar any claim for damages under §1983.

## ii.  Preclusion under *Rooker-Feldman* Doctrine

Moreover, assuming there have been some type of definitive, unfavorable dispositions of the plaintiff's various out-of-state criminal proceedings, the *Rooker-Feldman* doctrine would preclude the plaintiff from asserting a claim relating to her arrest on November 23, 2004.  This doctrine, "a combination of the abstention and *res judicata* doctrines, stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court.  A party raising a federal question must appeal a state court decision through the state system and then directly to the Supreme Court of the United States."  *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995)

---

convicted in that court on February 15, 2005, of the offense of "Criminal Trespass/Theft by Conversion."  The Georgia Court determined in that document that because the plaintiff had completed all terms and conditions of her probation, "it is recommended that the defendant's [plaintiff's] probation be terminated effective 3/10/05."

17

(citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Only the United States Supreme Court has jurisdiction to correct state court judgments. *Feldman*, 460 U.S. at 482.

   "Federal courts must give 'full faith and credit' to the judicial proceedings of state courts." *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir.), *cert. denied*, 525 U.S. 1041 (1998), citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984). Under these circumstances, this Court would lack subject matter jurisdiction over the plaintiff's claims against Officer Campbell, in his *individual* capacity. *Danforth v. Celebrezze*, 76 Fed.Appx. 615, 616-617, 2003 WL 22097852, **1 (6th Cir.(Ohio) September 4, 2003). *See also* Fed.R.Civ.P. 12 (b)(1).

### iii. *Younger* Abstention Doctrine

   Assuming the plaintiff's criminal convictions are not concluded and are still pending in the Georgia, North Carolina, and/or Virginia courts, the abstention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, (1971), would also bar the instant plaintiff's claims.

   When state proceedings are pending, principles of federalism dictate that the constitutional claims should be raised and decided in state court without interference by the federal courts. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17, 107 S.Ct. 1519 (1987); *Tindall v. Wayne County Friend of the Court*, 269 F.3d 533, 538 (6th Cir.2001). Three requirements must be met for *Younger* abstention to apply: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate important state interests; and (3) there must be an adequate opportunity in the state proceeding to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515 (1982); *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir.1995); *Doscher v. Menifee Circuit Court*, 75 Fed.Appx. 996, 997, 2003 WL 22220534, **1 (6th Cir.(Ky.)).

18

As to the first element, the plaintiff's criminal proceedings may still be ongoing in other state court systems.  As noted, the complaint is relatively devoid of  information as to the status of the these out-of-state criminal proceedings, so the Court can only conclude that one or all of the  matters are ongoing.  As for the second element, criminal matters are matters implicating important state interests.  As to the third and final element, there is no reason for the Court to conclude that the various other state courts are unable or unwilling to address Plaintiff's claims concerning whether there was probable cause to arrest her.

"Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff."  *Kelm v Hyatt*, 44 F.3d 415, 420 (citing *Pennzoil*, 481 U.S. at 1, 107 S.Ct. at 1521).  "In *Pennzoil*, the Supreme Court noted because all state court judges are bound by the United States Constitution, federal courts cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims . . . .   Accordingly, when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Kelm*,  44 F.3d at 420.

The Court concludes that under the *Younger* doctrine, it is required to abstain from intervening in or meddling with the plaintiff's criminal litigation pending in other jurisdictions.  As for the plaintiff's renewed "Motion for Protective Order" [Record No. 7], the Court will deny that motion for the same reasons set forth in its previous order entered on April 14, 2005 [Record No.8].

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  The plaintiff's First, Fourth and Fourteenth Amendment claims under 42 U.S.C. §1983 against Perry County, Kentucky, the Perry County Sheriff's office, and the Perry County Detention Center are **DISMISSED WITHOUT PREJUDICE**.

(2)  The plaintiff's Fourth and Fourteenth Amendment claims under 42 U.S.C. §1983 against the City of Hazard and the Hazard Police Department are **DISMISSED WITHOUT PREJUDICE**.

(3)  The plaintiff's Eighth and Fourteenth Amendment claims Against PCDC Jailer "Big" Mac Feltner; PCDC Deputy Jailer Johnnie Dean Feltner; and PCDC "Deputy Cornett," in their *individual* capacities, are **DISMISSED WITHOUT PREJUDICE**.

(4)  The plaintiff's Eighth and Fourteenth Amendment claims Against PCDC Jailer "Big" Mac Feltner, PCDC Deputy Jailer Johnnie Dean Feltner, and PCDC "Deputy Cornett," in their *official* capacities, are **DISMISSED WITH PREJUDICE**.

(5)  The plaintiff's Eighth and Fourteenth Amendment claims against PCDC Deputy Jailer Janice Feltner and PCDC "Matron" Fugate,  in their *official* capacities, are **DISMISSED WITH PREJUDICE**.

(6)  The plaintiff's Fourth and Fourteenth Amendment claims against "Officer Whitaker" of the Hazard City Police Department, in his *official* capacity, are **DISMISSED WITH PREJUDICE**.

(7)  The plaintiff's Fourth and Fourteenth Amendment claims against "Officer Campbell" of the Perry County Sheriff's Office, in his *official* capacity, are **DISMISSED WITH PREJUDICE**.

(8)  The London Clerk is directed to issue summons for defendants PCDC Deputy Jailer Janice Feltner and PCDC "Matron" Fugate, in their individual capacities, regarding the plaintiff's Eighth and Fourteenth Amendment constitutional claims.

(9)  The London Clerk is directed to issue summons for defendant "Officer Whitaker," in his individual capacity, regarding the plaintiff's Fourth and Fourteenth Amendment claims.

(10)  The plaintiff's renewed "Motion for Protective Order" [Record No. 7] is **DENIED**.

(11)  The plaintiff shall be responsible for proper service of the summons and complaint under the Federal Rules of Civil Procedure, paying particular attention to **all** applicable provisions of Fed.R.Civ.P. 4.

(12)  The plaintiff shall keep the Clerk of the Court informed of her current mailing address. **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

(13)  For every further pleading or other document she wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

This the 16th day of May, 2005.



Signed By:

**_Karen K. Caldwell_**

**United States District Judge**

21