UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-CV-115-KKC

MARY JOE EVERAGE, ET AL.                                                                                    PLAINTIFFS

v.                                        **MEMORANDUM OPINION AND ORDER**

OFFICER WHITAKER, ET AL.                                                                                   DEFENDANTS

Currently before the Court for consideration are "Motions to Dismiss" filed by counsel for the three remaining defendants in this action: Isaac Whitaker, a sergeant in the Police Department of the City of Hazard, Kentucky [Record No. 22]; Perry County Detention Center ("PCDC") Deputy Jailer Janice Feltner [Record Nos. 45 and 48];[1] and PCDC Matron Evelyn Fugate [*Id*]. Mary Joe Everage, the *pro se* plaintiff herein, has filed several submissions [Record Nos. 31, 34, 50, 51, and 53], all of which the Court has construed as responses to the two "Motions to Dismiss."

1. Complaint

On March 11, 2005, the  filed a complaint asserting numerous claims under 42 U.S.C. §1983 against several defendants [Record No. 1]. The facts as alleged by the plaintiff are set out in detail in the Memorandum Opinion and Order ("the Opinion and Order") which the Court entered on May 16, 2005 [*see* Mem. Op. & Ord., Record No. 11]. Summarized, the plaintiff complained about being arrested on June 27, 2004, and again on November 23, 2004. She alleged that on June 27, 2004, Defendant Isaac Whitaker, of the City of Hazard Police Department, violated her Fourth Amendment

---

[1] The submissions filed as Record Nos. 45 and 48 are the same pleading. Counsel for Defendants Feltner and Fugate originally filed a joint "Motion to Dismiss" on November 8, 2005 [Record No. 45]. Counsel then filed the same motion again on November 30, 2005 [Record No. 48]. It appears that counsel sent the second copy of the "Motion to Dismiss" to the plaintiff on November 28, 2005, after learning that the plaintiff's address had changed, in the interim, to the Federal Detention Center in Miami Florida [*See* Record No. 47].

1

rights by falsely arresting her, without probable cause, and taking her into custody in the PCDC. Soon after being taken into custody in the PCDC, she was transferred to the Fayette County Detention Center in Lexington, Kentucky.

She stated that as a result of her arrest in June, 2004, she filed a civil rights complaint in the Perry Circuit Court, in which she complained about numerous conditions of her confinement in the PCDC. She alleged that she slipped and fell while confined in the PCDC, sustained fractures of her ribs, and that two PCDC employees, Defendants Feltner and Fugate, denied her requests for medical treatment and care. She alleges that the fall caused her serious and permanent bodily injury.

Plaintiff alleged that in retaliation for filing the complaint in the Perry Circuit Court, she was again arrested by a Perry County Deputy Sheriff on November 23, 2004. That arrest stemmed from a fugitive charge which the state of Georgia had issued against her. She stated that she was again confined in the PCDC, this time for two months. She alleged that during her second period of confinement in the PCDC, she was again repeatedly denied medical care and was placed in a segregated cell which she described as "the hole."

In the Opinion and Order, the Court dismissed the majority of the constitutional claims the plaintiff had asserted, including all of the official capacity claims asserted against the individually named law enforcement and PCDC defendants. The Court will not reiterate its analyses used in dismissing various claims, as they are set forth in detail in the Opinion and Order. The Court allowed the plaintiff to proceed with her individual capacity claims against Defendants Whitaker, Feltner, and Fugate.

The record reflects that the plaintiff's address changed frequently during the pendency of this action. This fact is evidenced by not only the plaintiff's frequent notices of change of address [*See* Notices, filed as Record Nos. 27, 35, 44, 52, and 53], but also by several notations in the docket sheet indicating that numerous pleadings mailed to the plaintiff, by the defendants and the Court, were

returned to both by the United States Postal Service as "undeliverable." [*See* docket entries and/or Record Nos. 26, 30, 38, 40, 41, 43, 47 and 49].

On May 16, 2005, the plaintiff was indicted in the Pikeville Division of this Court for threatening Internal Revenue Service employees with physical violence, in violation of 26 U.S.C. § 7212(a). *See United States of America v. Mary Joe Everage*, 7:05-CR-11 (Hon. David L. Bunning, presiding). Plaintiff is now in the custody of the Bureau of Prisons and is currently confined in the Federal Medical Center, Carswell, located in Fort Worth, Texas. Judge Bunning ordered the plaintiff to submit to a mental evaluation and has ordered her counsel to supply certain medical records regarding her mental state to the government. The criminal proceeding is currently pending.[2]

2. "Motion to Dismiss/Summary Judgment"
Filed by Officer Isaac Whitaker [Record No. 22]

In his affidavit filed in support of his "Motion to Dismiss or for Summary Judgment," Officer Isaac Whitaker sets forth a detailed accounting of the events and circumstances involved in his arrest of the plaintiff on June 27, 2004. He states that on that date, the Hazard Police Department received a complaint, by phone, about a woman in the middle of Birch Street creating a disturbance. Whitaker states that when he and a fellow policeman, Officer Chris Combs, arrived at Birch Street, there was no one in the street but that an unidentified woman directed them to the plaintiff's residence. Whitaker states that he could see the plaintiff through the windows; that he tried to engage the plaintiff in conversation, but that she was not responsive. Whitaker alleges that he observed through the windows that the plaintiff was "acting strangely" and that he was concerned about her safety and/or the safety of

---

[2] The plaintiff advised the undersigned of her competency evaluation in a letter the Clerk dated February, 14, 2006 [Record No. 53]. She inferred that the State of Kentucky and "federal authorities" might be engaged in a conspiracy to "manipulate the system in order to thwart her two civil actions, "04–0549," and this proceeding, 05-CV-115.

others who might have been in the residence [*Id*., Aff., ¶6] .

Whitaker states that after he determined that Mr. Jerry Nantz owned the dwelling in which the plaintiff resided, he informed the plaintiff that he had notified Mr. Nantz to come to the dwelling. He reports that upon hearing Nantz's name, the plaintiff began shouting that she hated Jerry Nantz and that he had recently caused her vehicle to be vandalized. When Nantz appeared at the Birch Street dwelling, he informed Whitaker that although he had no lease agreement with the plaintiff, he had evicted her but that she had refused to vacate the premises.

After the plaintiff finally identified herself to Whitaker and provided her date of birth, he requested the Hazard Police Department to run a criminal warrant check through "NCIC." That investigation revealed that the plaintiff was wanted on fugitive charges in Georgia. After learning of the pending charges, Whitaker states that when he told the plaintiff that Nantz was there to unlock the door to allow him (Whitaker) to enter, the plaintiff stated, "I'll kill that son of a bitch." [*Id*., ¶11] Whitaker states that he informed the plaintiff that she could not threaten another person in the presence of a police officer. After Whitaker gained access to the house and determined that the plaintiff did not have a weapon, he arrested the plaintiff and charged her with terroristic threatening. She did not resist and he took her into custody without further incident.[3] Whitaker contends that based upon the plaintiff's conduct in threatening Jerry Nantz, and based upon her status as a fugitive, he had sufficient probable cause to arrest her on June 27, 2004.

Whitaker states that on September 30, 2004, he was subpoenaed to appear in the Perry District

---

[3] Whitaker states that when he completed his uniform citation for terroristic threatening, he did not include the charge relating to the plaintiff's status as a fugitive from another state. He states that he omitted that charge because, as he was transporting the plaintiff to the PCDC, his dispatcher informed him that Georgia authorities had advised that they did not wish to extradite the plaintiff at that time [*Id*, ¶15]. Documents attached to Whitaker's affidavit reveal that Georgia authorities later reversed that decision and did in fact seek the plaintiff's extradition on the fugitive charge, which action resulted in the plaintiff's subsequent arrest on November 23, 2004 [*Id*., ¶17].

Court for a pre-trial hearing on the terroristic threatening charge, DI-04-M-00743. Whitaker states that the plaintiff reached a plea agreement with the Assistant Perry County Attorney whereby she agreed to a one-year diversion on the terroristic threatening charge, on the condition that she not be arrested again and that she have no contact with the complaining witnesses [*Id.*, ¶16]. Whitaker attached the records from the Perry District Court which verify that the plaintiff did in fact agree to a pre-trial diversion with regard to the terroristic threatening charge [*Id*, Exhibit No. 1].[4]

Whitaker argues there are two reasons why the §1983 claims against him must be dismissed. First, he contends that the plaintiff's agreement to a pre-trial diversion on the terroristic threatening charge constitutes an *unfavorable* termination of the criminal charge and, accordingly, the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364 (1994), prevents the plaintiff from asserting a claim for false arrest under §1983. In *Heck*, the Supreme Court held that:

> ". . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or a sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983."

*Heck*, 512 U.S. at 487.

Whitaker asserts that according to precedent from this Court, being *Cissell v. Hanover Ins.*, 647 F. Supp. 757 (E.D. Ky. 1986), a pre-trial diversion of a criminal charge does not constitute a favorable termination such as to enable a plaintiff to pursue a §1983 claim. Whitaker submits that the §1983 claim

---

[4] There appears to be two different dates on these documents. The date on the envelope containing the history of the Perry District Court case contains a handwritten notation indicating that the pre-trial diversion agreement was reached on "9-30-04." The second page of the Exhibit lists the date at the top as being "6-30-04" and bears a stamp from the Perry County District Court's office with the date "7-2-04" written on the blank line. The third page lists the conditions of the pre-trial diversion and indicates the date as being "6-29-04" and that the "court date" would be "9-30-04." [Whitaker Affidavit, Exhibit No. 1].

asserted against him in his individual capacity must be dismissed.

Second, Whitaker argues that independent of the unfavorable termination of the terroristic threatening charge, he enjoyed qualified immunity from suit. He cited several cases, including *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In *Harlow*, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. Whitaker argues that the because the plaintiff threatened Nantz in his (Whitaker's) presence, and because she was determined to be a fugitive, his action in arresting her was objectively reasonable and did not rise to the level of a Fourth Amendment violation. Thus, he contends that he had qualified immunity from suit.

### 3. Plaintiff's "Sworn Affidavit" [Record No. 31]

The plaintiff filed a responsive submission to Whitaker's motion which consisted of several documents, including two narrative statements.[5] One is entitled "Personal Statement of Mary Jo Everage" and the other is entitled "Rebuttal of Whitaker's Argument." Summarized, the "Personal Statement" sets forth: (1) a list of unfortunate personal and professional events which befell the plaintiff prior to her arrest on June 27, 2004; (2) a discussion of her animosity toward her former landlord, Jerry Nantz; and (3) a detailed description of unpleasant and offensive conditions which she states she experienced while confined in the PCDC, including but not limited to denial of medical care, basic necessities, and vulgar propositions from lesbian inmates in the PCDC. She explains that as a result of

---

[5] The plaintiff also filed another document in the record on July 21, 2005, entitled "South Fulton Municipal Regional Inmate Grievance Form." [Record No. 34] This is a preprinted form in which the plaintiff complained to a Grievance Officer at this facility about her fractured ribs, punctured lungs, and need for prescribed pain medication. The Grievance Officer stated the facility would comply with her requests upon medical verification from the plaintiff's doctor. The Court cannot discern what relevance, if any, this completed form has to the pending issues in this case, other than to verify that the plaintiff sustained fractured ribs, which the defendants do not appear to dispute.

her confinement in the PCDC, she experienced severe emotional trauma and distress.

In her "Rebuttal of Whitaker's Argument," the plaintiff addresses the events of June 27, 2004. Summarized, she contends that Whitaker had no basis to arrest her or to be at her residence on that night, noting that he produced no tape, affidavit or statement from either the anonymous caller or her landlord. She also takes issue with Whitaker's description of Nantz's involvement on June 27, 2004. She claimed that there was an ongoing concerted effort among hazard officials to entrap her during the six months following her June, 2004 arrest.

Plaintiff denies that she entered into a plea agreement with the Perry County Attorney in September, 2004, and further complains that her Public Defender Attorney was subsequently arrested for cocaine use, for which he lost he his job. She questioned the fact that Georgia authorities decided in November, 2004, to extradite her, noting that those authorities had elected on two prior occasions not to extradite her. She also asked the Court to reconsider its previous decision, in the Opinion and Order, to dismiss the claims against the City of Hazard Police Department and the official capacity claims against the other individually named defendants.

### 4. "Motion to Dismiss/Summary Judgment" Filed by Defendants Feltner and Fugate [Record Nos. 45 and 48]

Defendants Feltner and Fugate dispute the allegation in the complaint that the PCDC had no grievance system through which to lodge prisoner complaints. They attached Kentucky Administrative Regulation 501 KAR §3:140 E. 6, entitled "Written Inmate Grievance Procedure That is Available to All Inmates." This regulation appears to govern inmate grievance procedures. The regulation states that an inmate is entitled to a response from the jailer within two days following investigation of the grievance, and that if the inmate is not satisfied, his appeal letter will be forwarded to the Perry County

Attorney's Office.[6]

Defendants Feltner and Fugate also submitted the affidavit of Tim Kilburn, Jail Administrator of the PCDC. Kilburn states that he reviewed all of the files pertaining to the plaintiff's confinement in the PCDC (which occurred on more than one occasion) and that there was no record that she ever filed any type of grievance about any condition of her confinement. Feltner and Fugate cite 42 U.S.C. §1997e(a), and case law decided under that statute, such as *Porter v. Nussle*, 534 U.S. 516 (2002), as authority that the plaintiff was required to have administratively exhausted her Eighth Amendment claims, by complying with 501 KAR §3:140, prior to filing suit in district court. They contend that in the absence of exhaustion, the plaintiff is precluded from asserting claims against them relating to the conditions of her confinement.

<u>5. Plaintiff's Responses
to Feltner and Fugate's Motion to Dismiss
[Record Nos. 42, 46, 50, 51 and 54]</u>

The plaintiff filed a series of handwritten documents which the Court collectively construes as responses to Feltner and Fugate's Motion to Dismiss.[7] In these filings, the plaintiff made various comments which could be construed as racial or ethnic in nature [Record No. 42]; maintained that she had never harassed any IRS employees [*Id*.]; asserted more complaints about the conditions of her confinement in the PCDC and complaints about treatment that other prisoner had experienced in the PCDC [Record No. 50]; alleged that Jailer Mac Feltner was personally responsible for the conditions in the PCDC [*Id*. and Record No. 54]; requested a copy of a five-year study which the University of

---

[6] The reference to the Perry County Attorney's Office was handwritten in a blank space in the regulation [Feltner and Fugate Motion, Record Nos. 45 and 48, Attachment, ¶6].

[7] The plaintiff entitled one submission, Record No. 46, as a "Motion to the Court" and sought all of her medical records from the PCDC; all her records from pertaining to her arrest and detention in 2004-2005; all records relating to her transport to Georgia in 2004; all of her records from the Sheriff's Office in Oconee County, Georgia; and discovery from all of the individually named defendants about their assets and holdings.

Kentucky conducted in 2004 concerning abuse of women in Eastern Kentucky [*Id.*]; complained that Deputy Perry County Sheriff Campbell did not have probable cause to arrest her in November, 2004 [Record No. 51]; and stated that Campbell violated her rights when he arrested her.

In none of these submissions did the plaintiff address the defendants' allegation that she had failed to file any administrative grievance about the conditions of her confinement at the PCDC.

DISCUSSION<br>1. <u>Standard of Review</u>

Fed. R. Civ. P. 12(b) provides for the dismissal of claims and parties for seven listed reasons. A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001). In addition to the allegations in the complaint, the Court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice. *Id*. at 360-61; *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003), *cert. denied*, 540 U.S. 1183, 124 S. Ct. 1424 (2004). Well-pled allegations must be taken as true and must be construed most favorably toward the non-movant. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Despite this liberal standard of review, the plaintiff is required to provide more than the bare assertion of legal conclusions. "[A] plaintiff's complaint will not survive a motion to dismiss under Rule 12(b)(6) unless it contains 'either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Uttila v. City of Memphis*, 40 F. Supp. 2d 968, 970 (W. D. Tenn.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir.1988)).

The defendants have also styled their motions as those seeking summary judgment. In

9

determining a motion for summary judgment, the Court must determine that there are "no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). A court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

In deciding a motion for summary judgment, therefore, the moving party has the burden of showing there is an absence of evidence to support a claim. *Id.* at 324-25. After a moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id*. If the non-movant completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23. With these factors in mind, the Court will address the defendants' motions and the plaintiff's responses.

2. <u>Claims Against Officer Isaac Whitaker</u>

Defendant Whitaker has attached to his affidavit documentation from the plaintiff's terroristic threatening/misdemeanor case in Perry District Court [Record No. 22, Whitaker Affidavit, Exhibit No. 1]. Aside from some slight confusion as to the exact date on which the case was finally terminated, it is clear to the Court that the plaintiff did in fact agree to a pre-trial diversion in exchange for a decision from

the Perry County Attorney's office not to prosecute her further on the terroristic threatening charge. The plaintiff claims in her narrative statement filed as Record No. 31 that she did not agree to any type of guilty plea with regard to the terroristic threatening charge. The records from the Perry District Court, which Defendant Whitaker has filed as part of his Motion to Dismiss, clearly demonstrate that the terroristic threatening charge against the plaintiff was terminated and disposed of by her agreement to submit to the terms of pre-trial diversion.

While it is correct that the disposition was not a "guilty plea," precedent from this Court dating back twenty years holds that a pre-trial diversion is not a favorable termination for malicious prosecution purposes. *Cissell v. Hanover, Ins. Co.*, 647 F. Supp. 757, 758-60 (E. D. Ky.1986). Other courts addressing this issue have come to a similar conclusion. *Tucker v. Duncan*, 499 F.2d 963, 964-65 (4th Cir.1974); *Lindes v. Sutter*, 621 F. Supp. 1197, 1200-02 (D.N.J.1985); *see also Singleton v. City of New York*, 632 F.2d 185, 193-94 (2d Cir.1980), *cert. denied*, 450 U.S. 920 (1981); *Konon v. Fornal*, 612 F. Supp. 68, 69-71 (D. Conn.1985); *Hinton v. City of Elwood, Kan*. 1991 WL 205035 (D. Kan.) (Not Reported in F. Supp.) (Where plaintiff entered into a Diversion Agreement, he could not demonstrate that the criminal proceeding terminated favorably to him; court concluded that it would be anomalous to allow the plaintiff to challenge probable cause for his arrest and incarceration for that same criminal charge, and dismissed false arrest and false imprisonment claims).

Although the claims in *Cissell* involved malicious prosecution and the claims against Whitaker are of false arrest and false imprisonment under the Fourth Amendment, *Heck* still precludes the plaintiff's claims against Whitaker. The plaintiff agreed to a pre-trial diversion, which was clearly an *unfavorable* termination of that charge under *Cissell*. Accordingly, she is precluded under *Heck* from asserting a Fourth Amendment challenge to her arrest. *See Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995) (Fourth Amendment claim precluded by subsequent conviction); *Walker v. Schaeffer*, 854 F.2d

11

138, 142-43 (6th Cir.1988) (challenge to probable cause for arrest precluded); *Peterson Novelties, Inc. v. Clinton Township*, 225 F.3d 659, 2000 WL 1091487, **2 (6th Cir.(Mich.)) (where plaintiff claimed that his rights under the Fourteenth Amendment were violated by false arrest and malicious prosecution, and plaintiff was convicted in state court following a plea of no contest, district court properly relied on *Heck v. Humphrey* in dismissing the claims, noting that the plaintiff's conviction entered as a result of that plea has not been invalidated, expunged, reversed, or called into question by the grant of a writ of habeas corpus); *Sellers v. City of Lebanon*, 173 F.3d 856, 1999 WL 183499, **1 (6th Cir.(Ohio)) (Under *Heck v. Humphrey*, plaintiffs' allegations of constitutional violations, trespass, and false arrest were not cognizable under §1983 because their convictions had not been reversed, expunged or invalidated by any court).

In *Konon*, decided prior to *Heck v. Humphrey*, the court was faced with false arrest claims made by a plaintiff who had entered into a program very similar to the pre-trial diversion program in which the instant plaintiff agreed to participate. Discussing what it considered to be important policy considerations, the court concluded that "having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the plaintiff, . . . it would be anomalous to allow the plaintiff to challenge here the existence of probable cause for his arrest and incarceration for that same criminal charge." *Konon*, 612 F. Supp. at 71.[8] The reasoning in *Konon* applies here.

---

[8] Judge O'Connor analyzed the issue as follows:

"While disposition of a criminal charge through a guilty plea requires the court to find that there is a factual basis for the plea, disposition through the accelerated rehabilitation law requires no findings of fact with respect to the defendant's guilt or innocence. However, it is unlikely that the accused will choose disposition pursuant to section 54-56e if there was no probable cause for his arrest. It would make no sense to allow an accused to bypass the criminal system with its various safeguards concerning probable cause, only to be able to turn around and claim in a subsequent civil action that there was no probable cause for his arrest. *If disposition pursuant to the accelerated rehabilitation law were held to leave open the plaintiff's right to bring a subsequent section 1983 action for false arrest and false imprisonment, fewer prosecutors would be willing to consent to such dispositions. The net result would be that the clear policy behind the accelerated*

The evidence of an unfavorable termination of the plaintiff's criminal charge is so one-sided that under the analysis set forth in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251-53, Defendant Whitaker must prevail as a matter of law. No discussion of qualified immunity is necessary. The Court determines that the individual capacity claims against Defendant Whitaker must be dismissed.

### 3. Claims Against Feltner and Fugate

As the defendant correctly notes, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires state and federal prisoners bringing actions concerning prison conditions (this includes any other incident to prison life, such as excessive force) to exhaust all available administrative remedies before suing in federal court. The United States Supreme Court issued an opinion four years ago clearly mandating that exhaustion of administrative remedies is required for *all* prisoner suits. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983 (2002) 534 U.S. at 524 (emphasis added); *see also Garfield v. Federal Prison Industries*, 3 Fed. Appx. 292, 2001 WL 921137 (6th Cir. (Ohio) January 26, 2001) (Not recommended for full-text publication) (Pursuant to 42 U.S.C. §1997e(a), the §1997e exhaustion requirement applies to *Bivens* actions brought by federal prisoners, even if they seek both equitable and monetary relief) (emphasis added); *Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2, 2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust administrative remedies before bringing suit under *Bivens* based on inadequate conditions of confinement).

---

*rehabilitation law--to give one accused of a crime not of a serious nature, who would probably not offend in the future, and who is a first-time offender, a one-time chance at personal rehabilitation without incurring the risk of a full trial on the merits of the information--would be thwarted. In light of these policy considerations, the plaintiff's section 1983 claim for false imprisonment is barred."*

612 F. Supp. at 72. *See also Roesch v. Otarola*, 980 F.2d 850, 853 (2nd Cir. 1992) (Second Circuit adopted the reasoning in *Konon* and held that a plaintiff could not bring claims for malicious prosecution or false imprisonment under §1983 when the plaintiff's criminal case was terminated under an accelerated pretrial rehabilitation program).

13

In order to meet the exhaustion requirement of the PLRA, a prisoner must either attach a copy of his prison grievance forms to the complaint or state the nature of the remedies pursued and the result of each process. *See Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir.2000); *Jones v. Bock*, 2005 WL 1400205, *1 (6th Cir.(Mich. June 15, 2005) (Not selected for publication in the Federal Reporter). Unless the record demonstrates that the requirements of §1997e(a) have been met, the court is required to dismiss an action without prejudice. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.), *cert. denied*, 119 S. Ct. 88 (1998). The burden is on the plaintiff to demonstrate exhaustion of his administrative remedies *prior* to filing the lawsuit. *Id.* For any issue the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion, before he can be considered to have substantially complied with the law. *See Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).

The defendants have submitted a sworn affidavit from PCDC Jail Administrator Tim Kilburn. Kilburn states that at no time during her various terms of confinement in the PCDC did the plaintiff file any grievance complaining about the conditions of her confinement (such as conditions in the isolation cell, alleges harassment by other inmates, alleged denial of her requests for medical care).

In none of her various submissions filed subsequent to the defendants' motion did the plaintiff refute that claim or, for that matter, even address Kilburn's sworn statement on the issue. In light of that fact, the Court must conclude not only that the plaintiff has no documentary evidence to dispute Kilburn's claim, but must further conclude that she does not even dispute Kilburn's allegation. Accordingly, there is no genuine issue of material fact regarding the plaintiff's failure to exhaust. The Court will grant Defendants Feltner's and Fugate's Motion to Dismiss/Motion for Summary Judgment, and will dismiss the plaintiff's Eighth Amendment claims against them.

The Court will also deny the plaintiff's request to reconsider the dismissal, in the Opinion and Order, of the numerous other claims asserted in the complaint [*See* Record No. 31]. In order to obtain

relief from a judgment or order under Fed. R. Civ. P. 60(b), a movant must demonstrate that an order (or judgment) was entered as a result of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which could not have been discovered in time to move for a new trial under Rule 59(b); or (3) fraud, misrepresentation, or other misconduct of the adverse party.[9] *See also Johnson v. Unknown Dellatifa*, 357 F.3d 539, 541 (6th Cir. 2004) (as a prerequisite to relief in a motion for relief from judgment, a party must establish that the facts of its case are within one of the enumerated reasons contained in the federal rule of civil procedure governing motion for relief from judgment that warrant relief from judgment).

The Court has reviewed its prior decision and determines that under Rule 60(b), the plaintiff has raised no issue or argument which would warrant reconsideration of the Opinion and Order. Finally, the Court will further deny as moot the plaintiff's various motions seeking discovery of documents and/or the issuance of subpoena ducas tecum [Record Nos. 28, 46 , 50, 51 and 54].

CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The "Motion to Dismiss" filed by Defendants Deputy Jailer Janice Feltner [Record Nos. 45 and 48] are **GRANTED** and the plaintiff's individual capacity claims against them are **DISMISSED**.

(2) The "Motion to Dismiss or for Summary Judgment" filed by Defendant Isaac Whitaker [Record No. 22] is **GRANTED**, and the plaintiff's individual capacity claims against him are **DISMISSED**.

(3) The following motions filed by the plaintiff, in which she seeks discovery and/or the issuance of subpoenas, are **DENIED** as **MOOT**: [Record Nos. 28, 46, 50, 51 and 54].

---

[9] There are several other grounds set forth in Rule 60(b) which serve as a basis for relieving a party from a final judgment, none of which are applicable in this case.

15

(4)     This action is **DISMISSED** and  and judgment shall be entered contemporaneously with this memorandum opinion in favor of all of the named defendants.

Dated this 27th day of March, 2006.

Signed By:
*Karen K. Caldwell*   KKC
**United States District Judge**